IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Trenetta McKiernan,                :

     Plaintiff,               :

  v.                               :          Case No. 2:09-cv-0476

Commissioner of Social Security,:          JUDGE HOLSCHUH

     Defendant.               :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Trenetta McKiernan, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. The applications, which had a protective filing date of August 23, 2005, alleged that plaintiff became disabled on June 12, 2001 due to heart disease.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on December 11, 2008. In a decision dated January 30, 2009, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on April 23, 2009.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on August 31, 2009. Plaintiff filed a statement of specific errors on November 18, 2009, to which the Commissioner responded on February 18, 2010. No reply brief has been filed, and the matter is now ripe for decision.

### II. Plaintiff's Testimony

Plaintiff was 48 years old at the time of the

administrative hearing. She graduated from both high school and cosmetology school. (Tr. 552). She last worked in 2001. (Tr. 554). She had been working at Abercrombie & Fitch as a set-up person and had a heart attack at work. She has had two more since then. (Tr. 555). She had also worked at a Speedway station and as a file clerk in a food stamp office. (Tr. 557). She had also been a school bus attendant. (Tr. 558). She had been actively looking for work but no one would hire her. (Tr. 559-60).

Plaintiff testified to getting short of breath after walking up a flight of steps. (Tr. 550). She has trouble sitting due to back problems. (Tr. 560). She experiences both shortness of breath and tightness in her chest on exertion. (Tr. 561). She also experiences tingling and numbness in her left arm. (Tr. 562). She also has restless leg syndrome. (Tr. 563). She takes time-release nitroglycerin and also uses nitroglycerin tablets about four times per week. (Tr. 568).

On a daily basis, plaintiff dusts and does dishes. She can do laundry but needs assistance carrying her laundry to the laundry room. (Tr. 564). She knits and crochets, and has tried to go to bingo with friends, but it makes her anxious. (Tr. 565).

### III. The Medical Records

The pertinent medical records show the following. On February 18, 2005, plaintiff was admitted to the hospital after complaining of chest pain. A catheterization was performed which revealed an ejection fraction of 60% and moderate diffuse coronary artery disease. She was discharged four days later with the diagnoses of coronary artery disease, myocardial infarction, high cholesterol, and depression. She was instructed to follow up with her primary care physician. (Tr. 135-54). She saw Dr. Schram on March 4, 2005, and reported being very tired. She was

-2-

continued on medication. Her heart disease was described as improved, as was her smoking habit. (Tr. 155-58). This episode followed a heart attack which plaintiff suffered in 2001, and a subsequent stent placement that occurred in 2003.

Plaintiff underwent a disability evaluation by Dr. Grodner on December 29, 2005. She reported a history of heart disease with chest pain on exertion, relieved by nitroglycerin. She also reported shortness of breath and restless leg syndrome. Additionally, she had back pain radiating into her hips which was worsened by standing and walking. She was taking Lexapro for depression. The physical examination was normal except for some mild decreased range of motion of the lumbar spine. Dr. Grodner thought that plaintiff would have difficulty performing almost any type of activity and had difficulty at rest under stressful situations. He did not evaluate the extent of her depression. (Tr. 176-78).

Plaintiff underwent a psychological evaluation performed by Dr. White on February 9, 2006. He had also examined her in 2004 in connection with a prior application. She reported depression since suffering her heart attack in 2001 and expressed feelings of worthlessness, guilt, helplessness, and hopelessness most of the time. She also reported frequent crying spells and suicidal ideation. Dr. White diagnosed an adjustment disorder with depressed mood and rated plaintiff's GAF at 58. The only limitation he identified was her ability to withstand the stress from a stressful environment, and he believed that ability to be mildly to moderately impaired due to her adjustment disorder. (Tr. 192-96). A state agency reviewer believed that she had the ability to perform work in a low production demand environment. (Tr. 197-204).

Plaintiff began seeing Dr. Borders for depression on November 29, 2006. She was described as passively suicidal at

-3-

that time and reported anxiety with no real panic attacks.  Her
medication was not helping her.  Dr. Borders recommended
psychotherapy and prescribed additional medications.  He
diagnosed major depression and rated her GAF at 53.  She
continued to see Dr. Borders for medication management and she
showed some improvement.  (Tr. 244-61).

Dr. Schram completed a basic medical form indicating that he
had last seen plaintiff on July 31, 2008.  At that time, he
thought that plaintiff could stand or walk for two hours a day
and that her ability to sit was unaffected.  She could lift and
carry up to ten pounds and did not have other significant
limitations.  Nevertheless, he indicated that she was
unemployable.  (Tr. 267-68).  Dr. Borders indicated on a similar
form that, from a psychological viewpoint, plaintiff had a number
of marked limitations, two extreme limitations, and was at high
risk for decompensation.  He did not think she was employable.
(Tr. 269-70).

The balance of the medical records consist primarily of
office notes from Dr. Borders and Dr. Schram and records
submitted in connection with prior disability applications.  They
do not appear to contain relevant information in addition to that
summarized above.

IV.  The Expert Testimony

A medical expert, Dr. Condon, testified at the
administrative hearing.  He stated that the records supported
diagnoses of ischemic heart disease, coronary artery disease,
diabetes, hypertension, and low back pain.  (Tr. 569).  He
thought plaintiff would have a significant amount of angina if
she lifted anything over ten pounds and that she could not lift
repeatedly overhead, nor could she climb steps repeatedly.  She
could not climb ladders or work at high places.  (Tr. 570-71).
Her work should be performed in sedentary fashion, and she should

-4-

not be exposed to environmental pollutants or extremes of temperature. (Tr. 571-72). She should not do any commercial driving. (Tr. 572).

A vocational expert, Ms. Kaufman, also testified at the administrative hearing. She characterized plaintiff's past work as ranging from light to heavy in exertional level. Some of it was semi-skilled and some was unskilled. (Tr. 574). If plaintiff were limited to sedentary work, she could not do any of those jobs. (Tr. 574-75). Ms. Kaufman was asked about a hypothetical person with plaintiff's background who was limited as described by Dr. Condon. She testified that such a person could do sedentary jobs such as sedentary cashier or unskilled clerical work. (Tr. 575). If she could not do jobs with production quotas, about 8,400 positions would remain. However, if she were limited as described in her testimony, there would not be any jobs available. (Tr. 576-77).

V. The Administrative Decision

In the administrative decision, the Commissioner found that plaintiff suffered from severe impairments including ischemic heart disease, hypertension, degenerative disc disease of the lumbosacral spine, diabetes mellitus, chronic obstructive pulmonary disease, major depression, and generalized anxiety disorder. As a result of these impairments, plaintiff was able to work only at the sedentary exertional level. Further, she could not do overhead lifting and had to avoid climbing ladders or being at unprotected heights. She also had to avoid concentrated exposure to temperature or humidity extremes and especially cold temperatures, and could not do work involving production quotas. With these limitations, plaintiff would not be able to perform any past relevant work. Because the vocational expert testified that, even with these restrictions, plaintiff could perform jobs that exist in significant numbers in

the economy, however, plaintiff was found not to be disabled.

## VI. Legal Analysis

In her statement of errors, plaintiff raises two issues. First, she argues that the Commissioner improperly substituted his personal opinion for the opinions of the treating and examining doctors and the medical evidence of record. Second, she argues that the Commissioner improperly failed to give controlling weight to the opinions of her treating and examining physicians and her treating psychiatrist. These contentions are evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is

supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's two assignments of error are related in that both of them argue that the Commissioner did not have a sound basis for rejecting the opinions expressed by Dr. Grodner, Dr. Schram, and Dr. Borders concerning plaintiff's inability to work. Because two of these medical sources were also treating sources, she argues that the Commissioner was required to, but did not, articulate valid reasons for rejecting their opinions. To resolve these issues, it is necessary to recite in some detail the basis for the administrative decision's finding that plaintiff was employable despite the contrary opinions expressed by these three medical sources.

The Commissioner is required by applicable regulations to accord substantial weight to the opinion of a treating source. And, as explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule." Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight. Two reasons underlie this procedural requirement. First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled. Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way. Id; see also Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The first physician to conclude that plaintiff might not be able to work even at the sedentary level, Dr. Grodner, was not a treating physician, but examined plaintiff only once for

disability purposes.  As the administrative decision notes, Dr. Grodner's examination produced "relatively benign clinical and diagnostic findings ...." (Tr. 22).  Additionally, Dr. Condon, who did not examine plaintiff but who did have the benefit of additional records, expressed a contrary opinion.  The Commissioner also concluded that Dr. Grodner's opinion was not only inconsistent with his own findings, but with the preponderance of the medical evidence of record, much of which also demonstrates fairly normal findings on examination and which does not document physical conditions that are inconsistent with the ability to do sedentary work.  These are valid reasons which a reasonable person could accept based upon this record.  To the extent that plaintiff claims that Dr. Grodner's finding that she would have difficulty performing any activities even at rest due to anxiety about her physical condition, this contention is more properly examined in connection with the similar opinions expressed by her treating sources, Drs. Schram and Borders.

As to Dr. Schram, as noted above, and as the administrative decision also points out, the physical restrictions he imposed concerning plaintiff's ability to sit, stand, walk, lift and carry are fully consistent with the ability to perform sedentary work activities.  In fact, the administrative decision correctly states that "the opinion of Dr. Schram describes a greater residual functional capacity than has been found in this decision." (Tr. 22).  His statement that plaintiff was unemployable was rejected (correctly, in the Court's view) because he "is not a vocational expert and is unable to make the assessment regarding whether the claimant is employable or unemployable based upon a specific functional capacity assessment." Id.  Again, to the extent that Dr. Schram's opinion related to plaintiff's psychological state, particularly her anxiety, it must be viewed in the context of all of the evidence

concerning her psychological conditions and limitations.

The two examining mental health sources were Dr. White and Dr. Borders. Dr. White did two separate psychological evaluations and both times diagnosed conditions which imposed no more than mild or moderate restrictions on plaintiff's ability to perform work-related functions. The state agency reviewers essentially concurred with his findings. These were the findings adopted by the administrative decision and incorporated into the Commissioner's residual functional capacity finding.

Dr. Borders clearly imposed restrictions which, if adopted, would make plaintiff unemployable. Although, as a treating source, his opinion was entitled to be given substantial weight, the administrative decision rejected his extreme limitations because they were not consistent with his own treatment notes. After his initial evaluation of plaintiff, where Dr. Borders diagnosed severe depression (although he assigned a GAF of 53), his treatment noted indicated that she improved with medication, and her condition was then described as either moderate or mild. The Commissioner found that although Dr. Borders concluded that plaintiff had mental limitations going far beyond those imposed by Dr. White, his treatment notes were more consistent with Dr. White's findings. (Tr. 23). The administrative decision also notes, in a finding not challenged here, that plaintiff's description of her daily activities is not consistent with the presence of a debilitating mental condition. _Id_. These reasons are sufficiently well-articulated and well-supported to satisfy both the substantive and procedural requirements of 20 C.F.R. §404.1527, as interpreted by <u>Wilson</u> and <u>Rogers</u>.

Plaintiff argues, however, that the Commissioner took Dr. Borders' treatment notes out of context because they describe plaintiff's mental state when she is not working, whereas his opinions about her marked and extreme limitations would describe

her situation if she were under the stress and pressure of daily work activities. That argument, while interesting, could be made in every disability case, because if the claimant were working at the time of the physical and mental examinations, he or she would not be eligible for disability benefits and there would be no need to determine a residual functional capacity. Essentially, plaintiff is taking issue with the weight assigned by the Commissioner to Dr. Borders' opinions. That is not a separate inquiry from the one the Court has just undertaken, and the Court has concluded that the Commissioner had, and articulated, valid reasons, supported by the record, for assigning less than controlling weight to Dr. Borders' opinions and for adopting the conflicting opinions of Dr. White and the state agency reviewers.

Here, the issue is not, as plaintiff characterized it, the Commissioner's substitution of his own medical judgment for that of the treating or examining sources. Rather, the evidence was in conflict as to plaintiff's residual functional capacity, and the Commissioner chose to credit certain medical opinions - those expressed by Dr. Condon, Dr. White, and the state agency psychological reviewers - over the opinions which found more extreme limitations. Each one of the Commissioner's medical findings is supported by the opinion of a medical source. Further, the Court has found that the Commissioner had acceptable reasons, supported by the record, for resolving the conflicts in the medical evidence in favor of a finding that plaintiff had the ability to perform the physical and mental demands of a limited range of sedentary work, and for giving less than controlling weight to the opinions of her treating sources. The vocational expert identified a significant number of jobs that someone with plaintiff's physical and psychological limitations could perform. Therefore, the Commissioner's decision is supported by substantial evidence and should be affirmed.

## VII. Conclusion

Based on the foregoing, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge